## W. F. GRESHAM *v.* W. L. KING.

1. ESTATE IN ENTIRETY. *Whether Section 1197, Code 1880, has a retroactive effect.*

   Section 1197, Code of 1880, which provides that a conveyance of land to a husband and wife shall be construed to create an estate in common, and not in joint tenancy or entirety, unless it shall manifestly appear that it was intended to create an estate in joint tenancy, with the right of survivorship, does not apply to estates created before its passage, because there is no indication of a legislative purpose to so apply it.

2. SAME. *Held prior to enactment of Section 1197, Code 1880. Section 1167, Code 1880, considered.*

   And where an estate was conveyed to K. and his wife jointly in 1877, and the wife died in 1881, the whole estate then vested in K. as survivor, unaffected by the statute above referred to, which went into operation in 1880. Nor is this result affected by Section 1167, Code of 1880, which removed the common law disabilities of married women.

APPEAL from the Chancery Court of Yazoo County.

HON. E. G. PEYTON, Chancellor.

In 1877, W. L. King purchased a certain tract of land.

The conveyance thereof was to " W. L. King and his wife, Selina King." In 1881, Mrs. King died, leaving as her heirs, her husband, and one son by a former marriage, W. F. Gresham.

Thereafter, W. F. Gresham, as heir of his mother, set up a claim to a one-fourth interest in the tract of land above referred to. There were various efforts at settlement between Gresham and King, the results of which are in dispute. On July 23, 1886, King filed his bill claiming the whole of the land by right of survivorship, and asking that Gresham's claim be removed, or held for naught as a cloud on his title. Gresham answered, made his answer a cross bill and claimed a one-fourth interest in the land in dispute and set out a certain contract between himself and King, of which he asked that the Chancellor compel a specific performance.

The contract alleged was in the form of a correspondence, which is as follows:

"DURANT, July 15, 1886.

DR. W. F. GRESHAM.—*Dear Sir:*—You caused me to take a long ride to inform me that you were entering suit against me. I am getting too old to enter into such business now. Money is no object, but I wish to make a few figures for you. The old place cost $2,400—repairs $700, and $200 for other expenses—in all $3,300. I have realized 50 bales of cotton, $40 per bale, $2,000. I am still out $1,300. Your claim $600—15 bales $600—$1,200. I cannot live at those rates, but, get pay for making this crop and take the place, and release me from any more care about it. What I did in the promises was for the happiness of my dear wife, that is gone from me. She made me an agreeable companion. I have passed a restless night. The late place is all the land I posses, and I would rather * * * * wrong, than to meet the frowns of an angry God, and know that I am right than all the wealth of many nations. I write this in all sincerity, not that I think defeat, but because I do not want to have to testify in this case. I have many things to say, but space forbids.                    W. L. KING."

Gresham, on the same day, claims to have duly mailed a reply to the above, as follows:

"W. L. KING.   *Dear Sir*—In reply to your favor of this morning, I desire to say that I am as anxious to avoid any litigation as you are; and while I feel that I am justly entitled to one-fourth interest in the place, rents and profits, since my mother's death, and not the whole place, as you propose, unless you had rather turn the place over to me than pay any part in money. I don't want anything but I think is right in the sight of God and man, and

what attorneys tell me I could collect by law. I know I have consulted sev_eral as good attorneys as there is in the State, and they all say I could collect what I claim; but, of course, after reading your letter and accepting your proposition, there will be no litigation in the matter. Matters of this kind should be properly arranged, and I would ask you to fix the time and place when the necessary papers can be prepared to consummate the compromise. Mr. H. S. Hooker will represent me in fixing up the papers, though he says it will only be necessary for you to sign a quit-claim, to take effect the first of January, 1887. Hoping to hear from you soon, I am, as ever,

"W. F. GRESHAM."

King claims never to have received the letter above set forth. A few days thereafter, on July 23, 1886, King instituted this suit. The chancellor decreed the claim of Gresham to be a cloud on the title of King, and granted the relief asked in the original bill, and refused to grant a specific performance of the contract alleged in the cross bill as above set forth. From this decree the defendant appealed.

*J. Wisner* and *T. H. Campbell*, for the appellant, each filed a brief in which he contended that Sec. 1197, Code of 1880, the effect of which was to wipe out the right of survivorship, had a retroactive effect and applied to the case at bar; that such act so applied was constitutional and did not destroy vested rights in a way violative of the constitution; that the effect of Sec. 1167, Code of 1880, by which all disabilities in relation to property rights of married women were removed had the effect to destroy the right of survivorship of the husband or wife in lands jointly held by them, and brought such lands within the operation of Sec. 1197, Code of 1880, by which all joint owners of lands are declared to be tenants in common unless otherwise expressly provided. The following authorities are cited:

*Annable* v. *Patch,* 3 Pickering, 363; *Miller* v. *Miller,* 16 Mass., 59; *Davis* v. *Clark,* 26 Ind., 24; *Chancellor* v. *Cheney,* 37 Ind., 391; *Burghardt* v. *Turner,* 12 Pickering, 534; Freeman on Cotenancy and Partition, Sec. 36, 66; *Brambaugh* v. *Brambaugh,* 11 Serg. & R., 192. Cooley's Constitutional Limitations, 320–21.

*Magee* v. *Young,* 40 Miss., 164.

They further contended that the contract made by the correspondence between the parties was sufficiently definite and

clear and should have been enforced specifically, citing Parsons on Contracts, vol. 3, p. 4, note c ; Dart on Vendors, chap. 6, p. 9, § 7 ; Waits Action and Defences, vol. 1, p. 95.

*Hudson & Holt*, for the appellee, in their brief contended that Sec. 1197, Code of 1880, did not have a retroactive effect and was not intended to apply to rights vested in the past; that if so interpreted it was unconstitutional, citing *Greer* v. *Blanchar*, 40 Cal., 198 ; *Dewey* v. *Lambier*, 7 Cal., 348 ; *Beadan* v. *Van Riper*, 1 How., 19 N. J. Eq. 399; 3 Randolph, 183 ; 4 Bush, 505 ; and to refute the theory of opposing counsel as to 1167 of the Code of 1880, they cited *McDuff* v. *Beauchamp*, 50 Miss., 531. They further contended that the alleged contract is too indefinite and uncertain to admit of specific performance, and is inequitable, unjust and void, citing Fry on Specific Performance, 165.

CAMPBELL, J., delivered the opinion of the Court.

There is nothing to indicate a purpose to apply Section 1197 of the Code to conveyances or devises made to husband and wife before its existence, and, according to the settled rule, a retroactive effect will not be given to it, if the legislature had the power to affect estates created before the act was passed, as to which it is unnecessary to decide. The question involved is not affected in any manner by Section 1167 of the Code. It completely removes the common law disabilities of married women; but it was not because of her want of capacity as a married woman that she could not dispose of an estate held by entirety. The husband could not dispose of it either. The curious incidents of such an estate sprang from its peculiarity, arising from the unity of husband and wife, from which it was said that each was seized of the whole estate, and it required the act of both conjointly to dispose of it.

The estate of King and wife, held by entireties when the Code of 1880 became operative, on the death of Mrs. King, in 1881, vested in King as survivor. This was an incident of the estate, not affected by any statute to hinder its operation.

We agree with the Chancellor in his refusal to decree a specific performance of the contract alleged in the cross-bill.

*Affirmed.*